UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| T&L INVESTMENTS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:10-00617 |
| | ) | JUDGE HAYNES |
| | ) | |
| BAYVIEW SMALL BUSINESS FUNDING, | ) | |
| LLC, and M&T BANK, N.A., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

Plaintiff, T&L Investments, LLC, a Tennessee limited liability company with its principal place of business in Franklin, Tennessee, originally filed this action in Williamson County, Tennessee Chancery Court against the Defendants, Bayview Small Business Funding, LLC, a Delaware limited liability company with its principal place of business in Coral Gables, Florida, and M&T Bank, N.A., a New York corporation. The Defendants removed the action to this Court under 28 U.S.C. § 1332, the federal diversity statute, without objection. Plaintiff's claim seeks a declaration that the terms of its promissory note on the prepayment of the outstanding balance are facially irreconcilable, ambiguous and therefore unenforceable.[1]

Before the Court is Defendants' motion to dismiss (Docket Entry No. 10), contending, in sum, that Plaintiff's Note's language, specifically the "lockout" and "prepayment" provisions, are neither ambiguous nor irreconcilable and the Note is enforceable under Chrisman v. M & T Bank, No. 3:08-0505, 2009 WL 801778 (M.D. Tenn. March 24, 2009). In its response (Docket Entry No. 17), Plaintiff contends that Defendants' reliance on Chrisman is misplaced in that Chrisman

---

[1]Plaintiff dismissed its other claims in its original complaint. (Docket Entry No. 23, Order).

involved a motion for summary judgment, not a motion challenging the legal sufficiency of a complaint. Plaintiff contends that its complaint contains sufficient facts to state a plausible claim for relief. Defendant argues that a Court may only take judicial notice of Chrisman for res judicata purposes.

For the reasons set forth below, the Court concludes that Defendants' motion to dismiss should be granted because the provisions in the promissory note are neither ambiguous nor irreconcilable and Plaintiff's complaint fails to allege sufficient facts to state a plausible claim for relief under Tennessee law.

## I. ANALYSIS OF COMPLAINT

On August 30, 2007, Plaintiff borrowed $792,000.00 from Defendant Bayview to purchase property in Franklin, Tennessee and executed an "Adjustable Rate Promissory Note" that set forth its obligations to repay the loan. (Docket Entry No. 1, attachment thereto, Complaint at ¶ 6). Defendant M&T is the current holder and servicing agent of the Note. Id. at ¶ 7.

Defendant M&T declined to accept Plaintiff's prepayment in full of the Note without payment of all interest that would have accrued on the entire balance up to the seventh anniversary of the loan. Id. at ¶ 19. M&T provided Plaintiff a payoff statement that as of April 8, 2010, was $1,127,499.30. Id., attachment thereto, Payoff Statement at p. 19. That figure included the remaining principal balance of $755,257.21, administrative fees of $312.00, total interest of $6,215.14, and prepayment consideration of $365,714.95. Id.

The terms of this note relevant to payment are, in relevant part, as follows :

7. PREPAYMENT.

a. Lockout Period: Borrower shall not be permitted to make any full or partial prepayment of the principal balance of this Note (a "Prepayment") prior to that date that is eighty-four (84) months after the date of this Note (the "Lockout Period"). If, for any reason, a Prepayment is made during the Lockout Period (a "Lockout Prepayment"), Borrower shall, simultaneously therewith, be obligated to pay: (I) the aggregate amount of interest which would have accrued on the unpaid principal balance of this Note from the date of such Lockout Prepayment through the expiration date of the Lockout Period (the "Lockout Fee"), plus (ii) all amounts specified in Section 7(b) below).

b. Prepayment Period: At any time during the Prepayment Period (as defined below), the principal balance of this Note may be prepaid in whole, but not in part, pursuant to the terms contained in this Section 7. If Borrower makes any Prepayment within the first Seven years after the date of this Note (the "Prepayment Period"), the Borrower shall be obligated to pay to Lender the following amounts:

>   (i) an amount equal to Five percent (5%) of the then outstanding unpaid principal balance of this Note (the "Prepayment Consideration"); and

>   (ii) all accrued interest on the outstanding principal balance to and including date on which the Prepayment is made; and

>   (iii) all other sums due under this Note, the Security Instrument and all Other Security Documents.

Id., attachment thereto, Promissory Note at p. 11.

According to Plaintiff's complaint, the cited provisions of the Note are ambiguous and irreconcilable because:

a) Subsection (a) states that "Borrower shall not be permitted to make any full or partial payment" during the first 84 months, while Subsection (b) makes it clear that "the principal balance of this Note may be prepaid in whole, but not in part" in the first seven years, the identical period of time.

b) Subsection (a) requires payment of all of the interest that would have accrued during the first seven years without regard to the date of payment, while Subsection (b) makes it clear that interest is payable only "to and including date on which the Prepayment is made."

3

Id. at ¶ 11. Plaintiff alleges that the provisions of Paragraph 7(a) and 7(b) are mutually exclusive and cannot both be enforced as applied to full prepayment. Id. at ¶¶ 12-13.

## II. CONCLUSIONS OF LAW

Upon a motion to dismiss, "a civil complaint only survives a motion to dismiss if it 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Courie v. Alcoa Wheel & Forged Prods., 577 F.3d 625, 629 (6th Cir. 2009) (quoting Ashcroft v. Iqbal, _ U.S. _, 129 S.Ct. 1937, 1949 (2009)) (citation omitted). The Court must "'construe the complaint in the light most favorable to the plaintiff, accept all its allegations as true, and draw all reasonable inferences in favor of the plaintiff.'" In re Travel Agent Comm'n Antitrust Litig., 583 F.3d 896, 903 (6th Cir. 2009) (citation omitted). The Court "'need not accept as true legal conclusions or unwarranted factual inferences . . . and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice.'" Id. at 903 (citations and quotation marks omitted).

In Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009), the Supreme Court explained the requirements for sustaining a motion to dismiss under Fed. R. Civ. P. 12(b)(6):

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. Id., at 555 (citing Papasan v. Allain, 478 U.S. 265, 286, (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." Id., at 557.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id., at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows

4

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id., at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" Id., at 557 (brackets omitted).

Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id., at 555, . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Id., at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1949-50.

As the Sixth Circuit stated, "[a] motion under rule 12(b)(6) is directed solely to a complaint itself . . . [.]" Sims v. Mercy Hosp., 451 F.2d 171, 173 (6th Cir. 1971). Thus, "when deciding a motion to dismiss a court may consider only matters properly a part of the complaint or pleadings." Armengau v. Cline, No. 99-4544, 7 Fed. Appx. 336, 343 (6th Cir. March 1, 2001). The Sixth Circuit has taken a "liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6)." Id. at 344. "If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings. At this preliminary stage in litigation, courts may

5

also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies." Id. (citations omitted).

As a diversity action, Plaintiff's claims are governed by state law. Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). The parties agree that Tennessee law governs Plaintiff's claims.

Under Tennessee law, "[t]he central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern." Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc., 78 S.W.3d 885, 890 (Tenn. 2002) (quoting Empress Health & Beauty Spa. Inc. v. Turner, 503 S.W.2d 188, 1990 (Tenn. 1973)). The parties' intent "is presumed to be that specifically expressed in the body of the contract." Id. "If clear and unambiguous, the literal meaning of the language controls the outcome of contract disputes," given that such language does not conflict with any rule of law, good morals, or public policy. Id.

In construing a contract, a court's initial task "is to determine whether the language of the contract is ambiguous." Id. If the contract's language is found to be ambiguous, the "court applies established rules of construction to determine the parties' intent." Id. If ambiguity remains, the legal meaning of the contract becomes a question of fact for the jury. Id. "A contract is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one. A strained construction may not be placed on the language used to find ambiguity where none exists." Farmers-Peoples Bank v. Clemmer, 519 S.W.2d 801, 805 (Tenn. 1975).

Yet, "'[a] contract is not rendered ambiguous simply because the parties disagree as to the interpretation of one or more of its provisions.'" Baptist Physician Hosp. Org., Inc. v. Humana Military Healthcare, 368 F.3d 894, 897 (6th Cir. 2004) (quoting International Flight Ctr. v. City of Murfreesboro, 45 S.W.3d 565, 570 n. 5 (Tenn. Ct. App. 2000)). "In construing contracts, the words

expressing the parties' intentions should be given the usual, natural and ordinary meaning. Where there is no ambiguity, it is the duty of the court to apply to the words used [in] their ordinary meaning and neither party is to be favored in their construction." Victoria Ins. Co. v. Hawkins, 31 S.W.3d 578, 581 (Tenn. Ct. App. 2000) (citation omitted).

Under Tennessee law, as in an apparent majority of the states, absent the payee's consent, there is no right to prepay a loan and avoid liability for interest accruing after the payment date and before maturity." Sound Stage Studios, Inc. v. Life Investors Ins. Co. of Am., 1988 WL 138827, at *2 (Tenn. Ct. App. Dec. 30, 1988) (citing Davis v. Hinton, 519 S.W.2d 776 (Tenn. 1975)). Thus, "without the payee's consent, the only way to discharge a debt prior to its maturity is to tender the principal along with the interest for the whole term of the note." Id. In Davis, the Tennessee Supreme Court explained:

> Generally, a creditor can no more be compelled to accept payments on a contract before they are due than a debtor can be compelled to make such payments before they are due.
>
> . . . .
>
> For this reason, prepayment privileges contained in the terms of a contract or note were developed for the benefit of the debtor. Under such a privilege, the debtor obtains the right to discharge the debt before maturity. Usually he will give up something in return for this privilege.
>
> The courts of the vast majority of jurisdictions, including Tennessee, have held that when such a privilege is given the debtor by contract, it is not usurious to condition the exercise of the privilege upon the payment of interest to the date of payment plus a bonus in addition. The bonus may be interest to the stipulated maturity date. Even where the loan contract did not contain provisions for prepayment, and the loan was voluntarily repaid before maturity, the courts have held that the lender may receive or retain interest to the maturity date without being guilty of usury.

519 S.W.2d at 777 (citations omitted).

More recently, the Sixth Circuit discussed Tennessee law and explained the reasons for allowing prepayment penalties, stating:

> The clear purpose for a prepayment penalty is to compensate the lender for the risk that market rates of interest at the time of prepayment might be lower than the rate of the loan being prepaid. Such a provision would compensate the lender for anticipated interest that would not be received if the loan were paid prematurely. Among other things, a prepayment premium insures the lender against loss of his bargain if interest rates decline.

United States v. Harris, 246 F.3d 566, 573 (6th Cir. 2001) (citations and quotation marks omitted).

Yet, the Tennessee Court of Appeals subsequently explained that under Tennessee law, the parties may alter this principle by express agreement:

> A payor may, however, gain the right to pay the note early, and avoid part of the interest, by including that right in the note or other loan documents as part of the agreement of the parties. In exchange for relinquishing the right to collect the interest to the date of maturity, the payee may insist on a fee to be added in the event of early payment. Davis v. Hinton, 519 S.W.2d at 777. The fee exacted for the prepayment privilege is commonly called the "prepayment penalty." This term is a misnomer since the fee is not a penalty at all, but a price paid for a right the payor did not otherwise have.

Life Investors, 1998 WL 138827, at *2 (citation omitted).

From a chronological reading of the relevant portions of the Note, 7(a), first reveals that the "Borrower shall not be permitted to make any full or partial prepayment of the principal balance of this Note (a "Prepayment") prior to that date that is eighty-four (84) months after the date of this Note (the "Lockout Period")." (Docket Entry No. 1, attachment thereto, Promissory Note at p. 11. This sentence reflects Tennessee law precluding a right to prepay a loan. Yet, the provisions of 7(b) describe the ramifications of such a prepayment:

> *If* . . . a Prepayment is made during the Lockout Period . . . Borrower shall, simultaneously therewith, be obligated to pay: (I) the aggregate amount of interest which would have accrued on the unpaid principal balance of this Note from the date

8

of such Lockout Prepayment through the expiration date of the Lockout Period (the "Lockout Fee"), *plus* (ii) all amounts specified in Section 7(b) below).

Id. (emphasis added).

Subsection (i) of 7(b) clearly states that if such prepayment is made, then the borrower must pay the unpaid principal balance of the note from the date of the lockout prepayment through the expiration date of the Lockout Period *in addition* to the amounts specified in Section 7(b). Thus, 7(b) is consistent with 7(a).

Because Tennessee law allows prepayment penalties and the Defendants' demands are authorized by the parties' contract, the Court concludes that Plaintiff has failed to state a claim for relief under Tennessee law. Accordingly, the Defendants' motion to dismiss (Docket Entry No. 10) should be granted.

An appropriate Order is filed herewith.

**ENTERED** this the ___1st___ day of February, 2011.

WILLIAM J. HAYNES, JR.
United States District Judge